**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **SHILPIKA DEVAIAH**<br>1558 Newman Ave.,<br>Lakewood, Ohio 44107,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**MURALIDHARA PRASANNACHAR**<br>18919 Cove Bend Ln.<br>Cypress, TX 77433,<br><br>-and-<br><br>**SMITHA MURALIDHARA**<br>18919 Cove Bend Ln.<br>Cypress, TX 77433,<br><br>-and-<br><br>**S4M INVESTMENTS LLC**<br>c/o Suleman Makhani, Registered Agent<br>5810 Cruiser Way,<br>Tampa, FL, 33615,<br><br>　　　　Defendants. | CASE NO.<br><br>JUDGE:<br><br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

**COMPLAINT FOR DAMAGES, ACCOUNTING, JUDICIAL DISSOLUTION,**
**INJUNCTIVE RELIEF, AND OTHER RELIEF**

The following allegations are based upon Plaintiff Shilpika Devaiah's personal knowledge, the investigation of counsel, and information and belief. Plaintiff, by and through undersigned counsel, alleges and states as follows:

## I.     <u>INTRODUCTION</u>

1. This case is not a routine business dispute. It is a calculated scheme by Defendants to seize control of a successful business, strip its value, and appropriate the benefits of Plaintiff's labor and investment—while forcing Plaintiff out with nothing.

2. Plaintiff built a thriving Ayurvedic wellness practice over years of independent work, then entered into a partnership with Defendants based on a shared plan to acquire, renovate, and operate a wellness center at 17119 Madison Avenue in Lakewood, Ohio (the "Property"). That Property was the centerpiece of the relationship and the primary inducement for Plaintiff's participation.

3. Defendants, however, structured ownership of the Property through their own affiliated entity, S4M Investments LLC, while using the Company's funds and Plaintiff's labor to renovate and dramatically increase the Property's value—from approximately $320,000 to as much as $700,000—without granting Plaintiff or the Company any ownership interest.

4. After the business became operational and valuable, Defendants engaged in a pattern of coercive and bad-faith conduct designed to force Plaintiff out of the Company and capture the value she created. This conduct included blocking access to the Company's financial accounts, placing a unilateral hold on the Company's bank account, causing utility shut-off notices, interfering with business operations, diverting opportunities to competing businesses, and asserting unilateral control over the Company.

5. At the same time, Defendants engaged in self-dealing by causing the Company to pay substantial expenses—including renovation costs and property taxes—for a building owned solely by their affiliated entity, while secretly attempting to characterize those expenditures as a "loan" without any agreement, documentation, or Plaintiff's consent.

6. Defendants have now escalated their misconduct by attempting to sell the Property outright—thereby appropriating the full benefit of Plaintiff's contributions and extinguishing her equitable interest—while refusing to account for the Company's investments or Plaintiff's ownership rights.

7. Defendants' actions have already caused operational disruption, financial harm, and damage to the Company's goodwill. Absent immediate judicial intervention, Defendants will dissipate assets, destroy the business, and irreparably harm Plaintiff's rights in both the Company and the Property.

8. Plaintiff brings this action to stop Defendants' misconduct, preserve the status quo, recover the value wrongfully appropriated, and obtain judicial dissolution, equitable relief, and damages.

## II.    JURISDICTION AND VENUE

9. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

10. This Court has original jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because they transact business within the State of Ohio, all material events alleged in this Complaint occurred in Cuyahoga County, and/or a substantial part of property that is the subject of the action is situated in Cuyahoga County.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b).

### III.    PARTIES

13.    Plaintiff Shilpika Devaiah ("Plaintiff") is an individual residing in Cuyahoga County, Ohio.

14.    Defendant Muralidhara Prasannachar ("Defendant Murali") is an individual who resides outside the State of Ohio but transacts business within Ohio and is a member of Vande Ayurshilpi Ayurveda LLC, an Ohio limited liability company formed on April 24, 2023 ("Vande" or the "Company").

15.    Defendant Smitha Muralidhara ("Defendant Smitha") is an individual who resides outside the State of Ohio but transacts business within Ohio and is a member of the Company.

16.    S4M Investments LLC ("S4M") is a foreign corporation that conducts business in Ohio and/or owns property that is the subject of this action in Cuyahoga County, Ohio.

17.    The Company operates an Ayurvedic Wellness Center located at 17119 Madison Avenue, Lakewood, Ohio 44107.

18.    Plaintiff and Defendants are members of the Company.

19.    Plaintiff owns 49% of the membership interests in the Company.

20.    Defendant Murali owns 25% of the membership interests in the Company.

21.    Defendant Smitha is Murali's spouse and owns 26% of the membership interests in the Company.

22.    Defendants each conducted business in Cuyahoga County, Ohio, and elsewhere in the State of Ohio, and at all relevant times acted through their agents, employees, subcontractors, or representatives within the scope of their authority.

23.    Each action or inaction alleged herein against Defendants is also an allegation of action or inaction by their owners, agents, predecessors, successors, employees, contractors, assignees, servicers, or any other individual or entity acting for or on their behalf.

## IV. FACTUAL ALLEGATIONS

24. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

**Formation of the Business**

25. Plaintiff founded and operated an Ayurvedic Wellness Practice in Lakewood, Ohio beginning in approximately 2018.

26. In early 2023, Defendants approached Plaintiff with a proposal to partner in expanding the business.

27. Plaintiff agreed to form the Company with Defendants.

28. Plaintiff contributed her existing business, goodwill, professional expertise, and labor to the Company.

29. Defendants represented that they would contribute capital toward acquisition and renovation of a property for the Company's operations.

30. The parties never executed a written operating agreement.

31. Accordingly, the governance of the Company is controlled by the default provisions of Ohio Revised Code Chapter 1706.

32. Plaintiff has been the sole operator responsible for the Company's day-to-day operations, including client services, hiring, vendor relationships, marketing, and management of the business location.

33. Defendants reside outside Ohio and have not participated in daily operations.

**Renovation and Operations**

34. The Company operates from property located at 17119 Madison Avenue in Lakewood, Ohio (the "Property").

35. The business relationship between Plaintiff and Defendants was formed specifically around the acquisition and use of the Property.

36. The Property is owned by an entity controlled by Defendants, S4M.

37. Plaintiff managed a complete renovation of the Property for the purpose of establishing the Company's Wellness Center. This renovation increased the property value from approximately $320,000 to between $600,000 and $700,000, directly benefiting Defendants' entity.

38. The Company expended substantial funds improving the Property and increasing its value.

39. In addition to Company-funded expenditures, Plaintiff personally contributed approximately $7,720 toward renovation and operational expenses, which have not been reimbursed.

40. Although title to the Property is held solely by S4M, Plaintiff and the Company possess substantial equitable interests arising from their contributions.

41. Plaintiff identified the Property and was instrumental in its acquisition, which was a central inducement for entering into the business relationship.

42. Since opening, Plaintiff has built the Company's client base and reputation through her work and professional services.

**Defendants' Misconduct**

43. Beginning in approximately 2024, Defendant Murali engaged in a pattern of conduct that interfered with the Company's operations.

44. Among other misconduct, Defendant Murali blocked Plaintiff's access to the Company's credit card for an extended period of time.

45. In or about January 2026, Defendant Murali unilaterally placed an ACH debit hold on the Company's primary operating bank account, without Plaintiff's knowledge or consent, which prevented the Company from making automatic payments for essential services, including electricity, gas, internet, and payment processing systems.

46. As a direct result of the ACH hold, the Company received multiple past-due and shut-off notices from utility providers, including a gas service termination notice dated February 18, 2026, and incurred late fees, penalties, and reconnection risks, all of which disrupted normal business operations.

47. Defendant Murali repeatedly threatened to assume unilateral control over the Company's operations.

48. Defendant Murali expressly stated to Plaintiff that he would "take over the operations and run it myself," and further stated that he was "putting the property on sale," despite unresolved ownership and equitable issues. These statements were made in the context of ongoing disputes and were intended to pressure Plaintiff and assert unilateral control over the Company.

49. Defendant Murali further threatened eviction of the Company from the Property.

50. Defendant Murali also attempted to sell the property without resolving the Company's rights to occupy and operate from the premises.

**Self-Dealing**

51. Defendants have asserted that a lease exists between the Company and an entity controlled by Defendants, S4M.

52. Plaintiff was never informed of, nor consented to, such a lease. Indeed, Defendant Murali admitted to Plaintiff he had executed a lease between the Company and his own affiliated entity without Plaintiff's knowledge or consent.

53. Despite Plaintiff's contributions, Defendants' accountant improperly classified the renovation expenditures as a 'loan' from Defendants to the Company in tax filings. There is no loan agreement, no promissory note, and Plaintiff never consented to this characterization.

54. The Company also paid approximately $20,000–$25,000 in property taxes for the Property, despite having no ownership interest in it.

55. Defendants have further caused the Company to pay property-related expenses benefiting other properties owned by entities owned and/or controlled by Defendants.

**Tax and Accounting Manipulation**

56. After receiving formal demand letters directing preservation of all financial records and accounting systems, Defendant Murali revoked Plaintiff's accountant's access to the Company's QuickBooks system on or about April 10, 2026.

57. Defendant Murali further threatened to file the Company's 2025 Form 1065 tax return unilaterally, despite known disputes regarding financial classifications, ownership structure, and prior reporting.

58. These actions were taken without Plaintiff's consent and in direct contravention of Defendants' fiduciary obligations and preservation duties.

59. Defendant Murali's prior conduct includes causing inaccurate or disputed classifications in Company tax filings, including:

    a. characterizing renovation expenditures as a "loan" without documentation;

b.   misrepresenting ownership and control roles; and

c.   allocating financial benefits in a manner adverse to Plaintiff.

60.   Defendant's unilateral control over tax reporting presents an ongoing risk of further financial manipulation and harm to Plaintiff.

**Competing Businesses**

61.   Defendants operate or participate in multiple businesses that compete with the Company.

62.   Defendants have used the Company's location, client base, and business goodwill to promote those competing businesses.

63.   These businesses include entities associated with Defendants' "Vande Wellness" and other integrative wellness ventures, including Total Health Centers, where Defendant Murali serves as a co-founder and executive.

64.   Defendant Murali has directed Plaintiff to promote and sell products from these businesses through the Company's operations.

65.   Defendant Murali has admitted that he requires funding "to keep my VANDE and THC going," and has represented that he is developing or operating an integrative wellness enterprise separate from the Company, while simultaneously seeking to sell the Company's primary operating location.

66.   Revenues from these activities were directed to Defendants' businesses rather than to the Company.

**Escalation of Harassment and Physical Intimidation**

67.   On or about April 27, 2026, Defendant Murali traveled to Ohio and appeared unannounced at the Company's business location while Plaintiff was actively treating clients.

68. At approximately 6:11 p.m., Defendant began repeatedly messaging Plaintiff demanding entry into the facility and requesting a key to the premises.

69. At the time, Plaintiff was in active treatment sessions with clients and could not leave her consultation room.

70. Despite being informed that Plaintiff was with a client and could not open the door, Defendant remained outside the premises and continued messaging.

71. At approximately 7:00 p.m., Defendant began banging on the door of the business while Plaintiff was in session with a client.

72. Defendant stated, among other things:

    a. that "it's my business too and it's my property";

    b. that he would wait until Plaintiff finished; and

    c. "Next time, if you do not open the door then, I will make sure to change scenario."

73. Defendant further indicated that he was monitoring the premises by referencing the departure of a prior client, demonstrating that he had been watching the building.

74. Defendant's conduct was intimidating, disruptive, and interfered with Plaintiff's ability to safely and professionally conduct client sessions.

75. Plaintiff, who is pregnant, was alone at the facility and feared for her safety as a result of Defendant's conduct.

76. After her session concluded, Plaintiff felt unsafe leaving the premises alone and was forced to ask a client to escort her out of the building.

77. Defendant's conduct was intentional, coercive, and part of a broader pattern of interference and control designed to disrupt the Company's operations and intimidate Plaintiff.

**Breakdown of Relationship**

78. Defendants' actions have destroyed trust among the members.

79. Defendants used their control over finances and property to interfere with operations, impose costs on the Company, and extract value while denying Plaintiff her rightful share.

80. Defendants have repeatedly reversed negotiated agreements relating to buyouts or business restructuring.

81. Defendants are now attempting to sell the property, which would eliminate Plaintiff's equitable interest and cause irreparable harm.

82. Defendants have refused to cooperate in resolving the dispute.

83. Defendants' conduct has made it impracticable for the members to continue operating the Company together.

84. The loss of business continuity, goodwill, and client relationships cannot be remedied by monetary damages alone.

## V.    COUNT I: BREACH OF FIDUCIARY DUTY

85. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

86. Under Ohio law, members of a limited liability company owe fiduciary duties to the company and its members.

87. These duties include the duty of loyalty, duty of care, and the obligation to act in good faith.

88. Defendants breached their duty of loyalty by, among other things:

    a. engaging in self-dealing transactions involving property owned by entities they control;

b. diverting business opportunities from the Company;

c. using the Company's resources and goodwill to promote competing businesses; and

d. dealing with the Company in a manner adverse to its interests.

89. Defendants breached their duty of care by engaging in reckless conduct including interfering with the Company's financial accounts and obstructing operations.

90. Defendants' conduct has caused damages to Plaintiff and the Company, and as such, Plaintiff demands judgment for damages, disgorgement of profits, equitable relief, and all other relief the Court deems appropriate.

## VI. COUNT II: JUDICIAL DISSOLUTION

91. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

92. Pursuant to Ohio Rev. Code §1706.471, a court may order judicial dissolution of a limited liability company when it is not reasonably practicable to carry on the company's business.

93. As set forth herein, Defendants' misconduct, self-dealing, and interference with operations have rendered the continued operation of the Company impracticable.

94. The relationship between the members has irretrievably broken down.

95. Judicial dissolution is necessary to protect the interests of the members and the Company.

96. As such, Plaintiff requests that the Court order judicial dissolution of Vande Ayurshilpi Ayurveda LLC, appoint a receiver to manage the Company during dissolution and supervise the winding up of the Company's affairs, and grant all other appropriate relief.

## VII. COUNT III: ACCOUNTING AND DISGORGEMENT

97. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

98.    Defendants have exercised control over certain financial aspects of the Company.

99.    Due to Defendants' actions, Plaintiff lacks access to complete financial records relating to the Company's finances.

100.    Defendants have engaged in transactions involving Company funds and related entities under their control.

101.    Equity requires a full accounting of all Company financial transactions.

102.    Defendants should be required to disgorge all profits or benefits obtained through breaches of fiduciary duty or self-dealing.

103.    As such, Plaintiff demands a complete accounting of the Company's finances, disgorgement of all improperly obtained funds, and all other equitable relief as the Court deems appropriate.

## VIII.    COUNT IV: SELF-DEALING AND USURPATION OF BUSINESS OPPORTUNITIES

104.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

105.    Defendants owed fiduciary duties to Plaintiff and the Company.

106.    Defendants used the Company's assets, location, and business goodwill to benefit competing businesses they control.

107.    Defendants diverted business opportunities and revenue that should have belonged to the Company.

108.    Defendants also attempted to impose financial obligations on the Company for the benefit of entities they control.

109.    Defendants' actions constitute improper self-dealing and usurpation of business opportunities.

110.  Defendants' conduct has caused damages to Plaintiff and the Company, and as such, Plaintiff demands damages, disgorgement, and equitable relief.

## IX.      COUNT V: UNJUST ENRICHMENT

111.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

112.  Plaintiff devoted substantial time, labor, and expertise to the creation and operation of the Company.

113.  Plaintiff also contributed resources and efforts that increased the value of the Property used by the Company.

114.  Defendants and entities they control have benefited from these contributions.

115.  It would be unjust for Defendants to retain those benefits without compensating Plaintiff.

116.  As such, Plaintiff demands judgment in an amount to be determined at trial representing the reasonable value of Plaintiff's contributions.

## X.      COUNT VI: INJUNCTIVE RELIEF

117.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

118.  Plaintiff is entitled to injunctive relief to prevent immediate and irreparable harm.

119.  Plaintiff has a substantial likelihood of success on the merits, as demonstrated by Defendants' documented conduct, including:

   a.  self-dealing transactions involving affiliated entities;

   b.  unauthorized control and interference with Company financial accounts;

   c.  diversion of business opportunities; and

   d.  attempts to sell the Property without accounting for Plaintiff's equitable interests.

120. Defendants' conduct has escalated to physical presence, intimidation, and threats at the Company's place of business, creating a risk of further disruption, harassment, and potential harm to Plaintiff and her clients.

121. Plaintiff will suffer irreparable harm absent injunctive relief, including:

   a. loss of her equitable interest in the Property;

   b. destruction of the Company's business operations;

   c. loss of goodwill, client relationships, and business reputation; and

   d. dissipation of assets that cannot be recovered through monetary damages alone.

122. There is no adequate remedy at law because the harm involves unique property interests, business goodwill, and ongoing operations.

123. The balance of equities strongly favors Plaintiff, as Defendants seek to retain the full benefit of Plaintiff's contributions while depriving her of any meaningful compensation.

124. The Company, through funds generated by Plaintiff's operations and contributions, expended approximately $140,000 on renovations that materially increased the value of the Property, which is titled solely in Defendants' affiliated entity, thereby conferring a direct and unjust benefit on Defendants.

125. The public interest is served by preventing fiduciary misconduct and enforcing equitable business practices.

126. Accordingly, Plaintiff is entitled to:

   a. Temporary Restraining Order;

   b. Preliminary Injunction; and

   c. Permanent Injunction.

127. Plaintiff specifically requests that the Court enjoin Defendants from:

a.  selling, transferring, conveying, leasing, licensing, renting, or otherwise disposing of or encumbering the Property;

b.  interfering with Company bank accounts or financial systems;

c.  exercising unilateral control over Company operations;

d.  dissipating Company or related assets; and

e.  filing or causing to be filed any federal, state, or local tax returns on behalf of the Company without mutual consent of the members or prior Court approval.

## XI.  COUNT VII: CONSTRUCTIVE TRUST AND EQUITABLE LIEN

128.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

129.  Plaintiff contributed substantial labor, expertise, and financial resources toward the renovation, improvement, and operation of the wellness center located at 17119 Madison Avenue, Lakewood, Ohio.

130.  These improvements substantially increased the value of the property owned by entities controlled by Defendants.

131.  Defendants now seek to sell or otherwise dispose of the Property while retaining the benefits created through Plaintiff's labor and the Company's funds.

132.  Defendants' conduct, including self-dealing transactions and breaches of fiduciary duty, makes it inequitable for Defendants to retain the full value of those improvements.

133.  Equity therefore requires the imposition of a constructive trust and/or equitable lien against the property and any proceeds derived from its sale.

134.  As such, Plaintiff requests that the Court:

a. Impose a constructive trust on the property located at 17119 Madison Avenue or any proceeds derived from its sale;

b. Impose an equitable lien securing the value of the Company's and Plaintiff's contributions to the Property;

c. Order that any sale proceeds be held in escrow pending resolution of this action; and

d. Grant such further equitable relief as the Court deems just and proper.

## XII.    COUNT VIII: DECLARATORY JUDGMENT (28 U.S.C. § 2201)

135. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

136. Plaintiff seeks a declaration of rights regarding:

a. the invalidity of any purported lease between the Company and S4M;

b. the proper characterization of renovation expenditures;

c. Plaintiff's equitable interest in the Property; and

d. the parties' respective rights and obligations.

137. An actual controversy exists between the parties regarding these issues.

138. A judicial declaration is necessary to resolve the dispute and prevent further harm.

## XIII.   COUNT IX: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

139. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

140. Plaintiff and the Company maintain ongoing business relationships with clients, vendors, and service providers necessary to operate the wellness center.

141. Defendants have knowledge of these relationships.

142.  Defendants intentionally interfered with these relationships by engaging in conduct including, but not limited to:

    a.  blocking access to the Company's credit card and financial accounts;

    b.  placing an ACH hold on the Company's bank account, preventing payment of operational services;

    c.  threatening eviction of Plaintiff and the Company from the premises used to conduct business; and

    d.  attempting to assume unilateral control of the Company's operations.

143.  Defendants' actions disrupted the Company's ability to serve clients and maintain business relationships.

144.  Defendants acted intentionally and without justification, with knowledge that their actions would disrupt the Company's relationships and operations.

145.  As a direct and proximate result of Defendants' interference, Plaintiff and the Company have suffered damages, and as such, Plaintiff demands judgment against Defendants for compensatory damages, costs, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

    a.    Award compensatory damages in an amount to be determined at trial;

    b.    Order judicial dissolution of Vande Ayurshilpi Ayurveda LLC;

    c.    Order a full accounting of the Company's finances;

    d.    Order disgorgement of all profits obtained through Defendant's misconduct;

    e.    Award restitution and equitable relief;

f.      Award costs, attorney fees where permitted by law, and interest;

g.      Issue a Temporary Restraining Order and Preliminary Injunction consistent with Count VI;

h.      Enjoin Defendants from entering or approaching the Company's business premises except as authorized by the Court;

i.      Enjoin Defendants from contacting or harassing Plaintiff outside of counsel;

j.      Impose a constructive trust and/or equitable lien on the Property and any sale proceeds;

k.      Order that any sale proceeds be placed in escrow pending resolution of this action; and

l.      Grant all other relief the Court deems just and proper.

Dated: May 6, 2026.

Respectfully Submitted,

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)
Matthew G. Bruce (0083769)
KOHL & COOK LAW FIRM, LLC
6728 Loop Rd., Ste. 204
Dayton, OH 45459
PH (937) 543-8361
FAX (937) 813-6057
mbruce@kohlcook.com
andrew@kohlcook.com
*Attorneys for Plaintiff*

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all triable issues.

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)